UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

VILLAGE OF HOBART, WI,

        Plaintiff,

       v.                                        Case No. 23-C-1511

UNITED STATES DEPARTMENT
OF THE INTERIOR, et al.,

        Defendants,

       and

ONEIDA NATION,

        Intervenor Defendant.

---

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND ENGAGE IN DISCOVERY**

---

The Village of Hobart filed this action challenging the Department of the Interior's decision to take land into trust for the Oneida Nation pursuant to § 5 of the Indian Reorganization Act (IRA) of 1934, 25 U.S.C. § 465. The case is currently before the court on the Village's motion to supplement the administrative record and to engage in extra-record discovery. For the following reasons, the motion will be denied.

## BACKGROUND

The IRA authorizes the Secretary of the Interior to acquire land and place it into trust for individual Indians and tribes "for the purpose of providing land for Indians." 25 U.S.C. § 465. The effect of granting fee-to-trust applications is that it removes the land placed in trust from state and local jurisdictions and exempts such land from state and local taxation. This results in

shrinkage of the tax base of the local government in which the property is located and the elimination of state and local government authority to enforce zoning, public safety, or environmental regulations on the land. 25 C.F.R. § 1.4. As a result, state and local governments with jurisdiction over the lands that are subject to fee-to-trust applications have a strong interest in the process.

On April 12, 2006, the Business Committee of the Oneida Nation enacted several resolutions requesting that the BIA accept several parcels of fee land owned by the Nation into trust. In 2007, the Nation submitted 56 fee-to-trust applications to the BIA for 133 parcels containing 2,673 acres of land. The parcels are all located within the Village. The Village received notice of the applications and submitted its comments opposing the applications.

The Midwest Regional Director of the BIA ruled in favor of the Nation and issued six notices of decision to accept certain parcels into trust for the benefit of the Nation. In 2010, the Village timely appealed the six notices of decision to the IBIA. On May 9, 2013, the Interior Board of Indian Appeals (IBIA) concluded that while the Regional Director had authority to take the land into trust, she failed to consider tax loss implications, potential land use conflicts, and jurisdictional problems. *See Vill. of Hobart v. Acting Midwest Regional Director*, 57 IBIA 4, 2013 WL 3054077 (2013) (*Hobart I*). The IBIA vacated the Regional Director's notices of decision and remanded the matter for the Regional Director to consider these issues as well as the Village's arguments with respect to environmental impacts and bias in decision making. The IBIA did not consider the Village's arguments regarding the constitutionality of the IRA finding that it lacked jurisdiction to do so.

On January 19, 2017, the Regional Director issued a decision accepting the fee land into trust. *See* Dkt. No. 1-4. The Village again appealed the Regional Director's decision to the IBIA.

2

As part of its appeal, the Village asserted that the Regional Director's decision was the product of bias due to the decision being processed and issued under a Memorandum of Understanding (MOU) entered into between the BIA and a number of tribes, including the Nation. The BIA and the Nation entered into the MOU to facilitate the expeditious processing of fee-to-trust applications. Dkt. No. 1-3 at 2. In accordance with the MOU, the BIA hired additional employees to process the fee-to-trust applications, and the tribes funded the salaries of those additional employees. The Village argued that because the fee-to-trust applications were processed by employees whose jobs were funded by the Nation, the decisions were not the product of a neutral, independent decision maker. It claimed that the MOU fostered improper *ex parte* communications, created an impermissible conflict of interest, and is contrary to the Indian Self-Determination and Education Act, 25 U.S.C. § 5301, *et seq.*, and the Tribal Self-Governance Act, 25 U.S.C. § 5361, *et seq.* The IBIA affirmed the Regional Director's decision in full on September 21, 2023. *See Vill. of Hobart v. Acting Midwest Regional Director*, 69 IBIA 84, 2023 WL 6458987 (2023) (*Hobart II*).

The Village initiated this action under the Administrative Procedure Act (APA), 7 U.S.C. § 701, *et seq.*, on November 10, 2023, seeking to vacate the IBIA's decision on the ground that it is arbitrary and capricious and represents an abuse of discretion. The Village asserts that the BIA and the IBIA violated its right to due process as a result of the bias created by the MOU. The Village also challenges the constitutionality of the IRA, 25 U.S.C. § 5108, and 25 C.F.R. § 1.4.

## ANALYSIS

### A. Motion to Supplement the Record

The defendants filed the administrative record from the IBIA appeal with the court on June 28, 2024, and relodged the administrative record with the court on July 30, 2024. The Village

3

moved to supplement the record, arguing that the defendants have not provided the court with the entire administrative record that was before the IBIA.

An index included in the administrative record submitted to the IBIA notes the existence of "post-remand privileged documents" and "pre-remand privileged documents" amounting to 2,391 total pages. *See* Dkt. No. 35-13 at 1138–40. The index submitted to the IBIA stated, "The following documents are confidential privileged communications exempt from disclosure under the Freedom of Information Act and should not be released outside the Department of the Interior. They are included in the Administrative Record in compliance with 43 CFR 4.335." *Id.* at 1138. The index provided a description of the documents, the date they were created, the sender of each document, the recipient, the nature of the material or communication, and the claimed privilege. The defendants produced the documents to the IBIA in a sealed box, but the documents were not reviewed by the IBIA or disclosed to the Village. The Village requests that the court compel The defendants to produce and disclose the 2,391 pages of excluded documents.

The defendants argue, however, that the Village waived any argument regarding the disclosure of documents. They assert that because the Village did not object to the sealed documents being withheld from review by the IBIA or request that they be disclosed to the Village when the IBIA was reviewing the Regional Director's decision, it cannot raise the argument here. If the Village believed the sealed documents contained evidence of bias on the part of the Regional Director, it should have demanded access to them at that stage of the proceeding and presented its argument to the IBIA so that the IBIA could have addressed it in the first instance instead of waiting until after the IBIA had issued its decision.

The defendants' argument is persuasive. In a normal case, objections not made in the trial court are waived on appeal. Administrative appeals to district courts work the same way.

"[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." *United States v. v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *see also Ester v. Principi*, 250 F.3d 1068, 1072 (7th Cir. 2001) ("[A]ny objections not made before the administrative agency are subsequently waived before the courts."). Just as appellate courts do not entertain arguments which could have been, but were not, raised in the trial court, a court reviewing a decision by an administrative agency should decline to consider arguments that were never presented to the agency whose decision it is called upon to review. *Massachusetts, Dep't of Pub. Welfare v. Sec'y of Agric.*, 984 F.2d 514, 523 (1st Cir. 1993).

Applying these principles to the facts of this case, it follows that the Village has waived its right to review and supplement the record before this court with the sealed documents by failing to raise the issue before the IBIA. Had it done so, the IBIA could have addressed its argument that the documents should be disclosed as evidence of bias on the part of the Regional Director, just as the IBIA did in its earlier decision remanding the case to the Regional Director for consideration of the Village's claim of bias due to the MOU with the Tribes. But no such argument was made to the IBIA, even though the Village knew that the documents were submitted to it under seal. Having failed to raise the issue before the IBIA, the Village is precluded from doing so before the court.

The Village contends that waiver aside, it is entitled to access to the sealed documents because they are part of the record before the IBIA. But the documents are not in any real sense part of the administrative record. The documents the Village asks the court to disclose remained under seal throughout the IBIA review and the IBIA states that it did not consider them in arriving at its decision. *See Hobart II*, 2023 WL 6458987, at *111 n.24 ("The Board has not reviewed the

contents of those withheld documents."). Thus, they do not form any part of the basis for the IBIA's decision which the court is called upon to review.

In reviewing an agency's decision, the APA instructs courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (judicial review must be "based on the full administrative record" before the agency), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). This means "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Miami Nation of Indians of Ind. v. Babbitt*, 979 F. Supp. 771, 775 (N.D. Ind. 1996). The agency is responsible for compiling the administrative record, and there is a strong presumption that the administrative record as furnished by the agency is complete. *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12–13 (D.D.C. 2015). Plaintiffs may overcome this presumption by "identifying reasonable, non-speculative grounds for their belief that the documents" they seek to add to the administrative record "were considered by the agency and not included in the record." *Id.* at 13 (cleaned up).

Because the Board did not consider the withheld documents, they are not considered part of the record in this case. Since they were not viewed by the Board and neither party cited them in the respective submissions to the Board, in no sense could they have formed any part of the IBIA's decision in this case. Because they were not part of the record considered by the IBIA, the Village's motion to supplement the record is denied. And since the undisclosed documents are not part of the administrative record, the court need not decide whether they fall within the deliberative process or attorney-client privileges.

6

Case 1:23-cv-01511-WCG    Filed 01/28/25    Page 6 of 10    Document 52

**B. Motion to Engage in Discovery**

The Village also asks to engage in discovery on its constitutional claims. In particular, the Village seeks to take the following discovery: requests for admission; interrogatories; requests for production of documents; and depositions of certain agency employees, such as the Regional Director, BIA employees involved in drafting and processing fee-to-trust applications, and certain employees or members of the Nation who communicated directly with the BIA employees responsible for drafting and processing the fee-to-trust applications.

"Discovery is generally not appropriate for claims brought under the APA." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). This rule reflects the recognition that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp*, 411 U.S. at 142; *see also Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1081–82 (7th Cir. 2016) ("Generally, discovery is not appropriate for claims brought under the APA since review of an agency's decision is confined to the administrative record."). Only under rare circumstances, where a plaintiff can make a "strong showing of bad faith or improper behavior," may a court permit extra-record discovery. *Dep't of Commerce v. New York*, 588 U.S. 752, 781 (2019) (citation omitted). A "strong showing of bad faith or improper behavior" is necessary to venture beyond the agency's "administrative findings" and inquire into "the mental processes of administrative decisionmakers." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). "Bad faith requires a strong showing of evidence suggesting improprieties; 'mere assertions' will not suffice." *Doe v. United States Citizenship & Immigration Servs.*, No. 15-C-10958, 2016 WL 3640687, at *5 (N.D. Ill. June 29, 2016) (citation omitted). The Village has not met that burden here.

7

The Village contends that the defendants' failure to include the sealed documents in the administrative record they filed with the court constitutes the bad faith needed to justify extra-record discovery. But for the reasons already set forth, the court has concluded that the sealed documents are not part of the administrative record since they were not considered by the IBIA and played no part in its decision. The defendants contend that the sealed documents fall within the attorney-client privilege or the deliberative process privilege. Having waived any objection it may have had to the defendants' refusal to disclose these documents by failing to raise the issue before the IBIA, the Village cannot claim now that the defendants' assertion of privilege constitutes the level of bad faith that opens the door to discovery of all aspects of the internal decision-making process by the Regional Director. This is not a case where the agency hid or denied the existence of evidence that the claimant later acquired from other sources. The documents the Village only now seeks access to were included in the record before the IBIA, albeit under seal. As noted above, if the Village believed these documents were relevant to its appeal, it should have raised that issue before the IBIA. It is not bad faith to oppose the Village's current request on grounds of waiver.

The Village also argues that "the Defendants' bad faith or improper behavior is demonstrated under the very terms of the MOU that the Village challenges in this matter." Dkt. No. 40 at 15. Under the MOU, the Village argues, the Nation is funding the salaries of the same employees who act as liaisons with the Nation, who prepare the draft notices of decision, and who prepared the record for appeal. *Id.* In support of its argument of bias, the Village has cited the final report of the Inspector General (IG) of the Department of Interior that focused primarily on an MOU between a consortium of California tribes and the BIA's Pacific Regional Office under which the tribes reprogramed federal funds to the Regional Office to hire additional employees to

facilitate fee-to-trust applications and eliminate the backlog caused by limited BIA funding. Although the IG found no instances of actual bias under either the Pacific MOU or the Midwest Region MOU, it acknowledged the possibility of the appearance of unfairness of the fee-to-trust application process. The MOU between the tribes and the Midwest Regional Office in effect when the Regional Director approved the Nation's applications, however, was a revised version of the MOU that was reviewed by the IG. The revised agreement clarified that BIA employees funded through the consortium are federal employees subject to Title 5 of the United States Code and supervised by BIA staff outside the Division of Fee-to-Trust.

The mere existence of the MOU under which tribes redirect funds to regional BIA offices to assist in processing fee-to-trust applications is not enough to justify allowing the Village to engage in extra-record discovery. The MOU itself is a part of the record and it is undisputed that the procedures and framework it established were in place at the time the challenged decisions were entered. The Village's argument that those procedures and framework violate the Constitution or the APA can be addressed based on the administrative record.

Finally, the Village argues that it is entitled to discovery on its constitutional claims. But the Village's constitutional challenges, for the most part, raise only legal questions. The Village alleges, for example, that the power granted to the Department of Interior to grant fee-to-trust applications constitutes an unconstitutional delegation of legislative power to the executive branch (Count I), that it exceeds Congress's power under the Commerce Clause (Count II), that it violates the Enclave Clause (Count III), that it violates the Tenth Amendment (Count IV), that it violates the privileges and immunities of non-Indians under the Fifth and Fourteenth Amendments (Count V), that it violates the guarantee of a republican form of government to every State set forth in Article IV, section 4 of the Constitution (Count VI), and that 25 C.F.R. § 1.4 unconstitutionally

exceeds the scope and authority of the IRA (Count VII). These claims rest on legal arguments that are not dependent on any amount of discovery beyond what the administrative record contains.

Only as to Count VIII, the Village's claim that its due process rights were violated by an allegedly biased fee-to-trust application process, could extra-record discovery conceivably be relevant. But the conclusory allegation that the Regional Director was biased does not constitute the strong showing of bad faith or improper behavior needed to permit extra-record discovery. And for the reasons set forth above, the fact that various tribes redirected funds to the BIA in an effort to eliminate the backlog on fee-to-trust applications does not give rise to a presumption of bias. Like the court in *Morrison County v. United States Department of Interior*, No. 24-cv-23 (D. Minn. Dec. 3, 2024), this court "does not find this widely adopted practice commensurate with strong evidence of improper bias because the MOUs pertain to the salaries of only some staff personnel at the BIA and not the ultimate decision maker—the Regional Director." Dkt. No. 50-1 at 9–10 (underline in original).

## CONCLUSION

For these reasons, the Village's motion to supplement and complete the administrative record and to engage in discovery (Dkt. No. 39) is **DENIED**. The clerk is directed to set the matter on the court's calendar to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of January, 2025.

_____
William C. Griesbach
United States District Judge